**SEALED**

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>IN THE MATTER OF THE APPLICATION FOR A SEARCH WARRANT FOR AN APPLE<br>IPHONE CELLULAR PHONE (TARGET DEVICE); SEIZED FROM TRAFFIC STOP ON<br>3221 HIGHWAY 51, LAPLACE, LA, AND CURRENTLY LOCATED AT  3838 N.<br>CAUSEWAY BLVD., SUITE 1800, METAIRIE, LA 70002 (DEA NEW ORLEANS) | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 19-mc-12530

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____Eastern_____ District of _____Louisiana_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Distribution, Possession with Intent to Distribute, and Conspiracy<br>to Distribute and Possess with Intent to Distribute Illegal Narcotics |

The application is based on these facts:

See Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Task Force Officer Douglas Buckler, DEA
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____09/12/2019_____

_____
*Judge's signature*

City and state:  New Orleans, Louisiana

Honorable Janis Van Meerveld, U.S. Magistrate Judge
_____
*Printed name and title*

## ATTACHMENT A

*Property to be Searched*

1.    **Target Device** is identified as an Apple iPhone, black in color, IMEI: Unknown, Serial Number: Unknown, with a red plastic case.  The **Target Device** is currently located at the Drug Enforcement Administration (DEA) New Orleans Field Division (NOFD), 3838 N. Causeway Blvd., Suite 1800, Metairie, LA 70002.

2.    This warrant authorizes the forensic examination of **Target Device** for the purpose of identifying the electronically stored information described in **Attachment B**.

## ATTACHMENT B

1.      All records on the listed communication device described in **Attachment A** that relate to the violations of Title 21, United States Code, Sections 841(a)(1) and 846 (Distribution, Possession with Intent to Distribute, and Conspiracy to Distribute and Possess with Intent to Distribute Illegal Narcotics) and involve **NARCISSE** before and up to his arrest date of August 25, 2019, including:

      a.   Any subscriber information, contact information to include, names, addresses, telephone numbers, email addresses or other identifiers;

      b.   Any call log information, including missed, incoming and outgoing calls and any information associated with those numbers;

      c.   Any photographs, video and audio files;

      d.   Any text messages, email messages, chats, multimedia messages, installed applications or other electronic communications;

      e.   Any calendar, note, password, dictionary entries;

      f.   Any Global Positioning Satellite (GPS) entries, Internet Protocol Connections, Location entries to include Cell Tower and Wi-Fi entries;

      g.   Any internet or browser entries or history;

      h.   Any system, data or configuration information contained within the devices;

      i.   List of customers and related identifying information;

      j.   Types, amounts, and prices of drugs and firearms trafficked as well as dates, places, and amounts of specific transactions;

      k.   Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information); and

l.   All bank records, checks, credit card bills, account information, and other financial records.

2.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# SEALED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION FOR A SEARCH WARRANT FOR AN APPLE iPHONE CELLULAR PHONE (TARGET DEVICE); SEIZED FROM TRAFFIC STOP ON 3221 HIGHWAY 51, LAPLACE, LA, AND CURRENTLY LOCATED AT 3838 N. CAUSEWAY BLVD., SUITE 1800, METAIRIE, LA 70002 (DEA NEW ORLEANS) | Case No. 19-mc-12530<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION
### UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Douglas Buckler, being duly sworn, declare as follows:

### INTRODUCTION AND TASK FORCE OFFICER BACKGROUND

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – one electronic device-currently in law enforcement possession, and the extraction from that property of electronically stored information described in **Attachment B**.

2.    I am a Task Force Officer with the Drug Enforcement Administration ("DEA"), High Intensity Drug Trafficking Area ("HIDTA") currently assigned to the New Orleans Field Division.  I have been employed with the St. John the Baptist Parish Sheriff's Office ("SJPSO") since June 2014, and have been assigned to HIDTA since September 2017.  I have participated in investigations involving federal drug violations during that time.  As a result of my DEA and law enforcement training, general knowledge, and experience as a Task Force Officer with the DEA, I am familiar with federal drug laws.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant, and therefore it does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.      The property to be searched is an Apple iPhone cellular telephone, IMEI: Unknown, Serial Number: unknown, black in color with a red plastic case (**"Target Device"**). As set forth more fully below, the **Target Device** was seized during a search of a vehicle located at 3221 Highway 51, Laplace, Louisiana, pursuant to a traffic stop of a motor vehicle on August 25, 2019. This Court has jurisdiction to issue a search warrant for the **Target Device** because the device is currently held at the DEA New Orleans Field Division Office at 3838 N. Causeway Blvd., Suite 1800, Metairie, Louisiana 70002.

5.      The applied-for warrant would authorize the forensic examination of the **Target Device**, as more fully described in **Attachment A**, for the information listed in **Attachment B**.

## PROBABLE CAUSE

6.      I submit that there is probable cause to believe that the **Target Device** contains evidence of violations of federal law, specifically conspiracy to distribute controlled dangerous substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and the use of communications facilities in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843.

7.      The information contained in this affidavit is based upon information obtained during an investigation conducted by the Drug Enforcement Administration ("DEA"), and SJPSO. Since approximately March 2018, Special Agents of the DEA have been investigating **Ellis BATISTE, Sr. ("BATISTE")**, and other persons known and unknown, in connection with possible violations of federal laws, including Title 21, United States Code, Sections 841(a)(1) and

2

846.   **BATISTE** and his associates are believed to be illegally distributing and trafficking controlled substances in the Laplace, Louisiana area.

**Traffic Stop of Octavius NARCISSE and seizure of approximately 5 kilograms of suspected powdered cocaine and approximately 1 kilogram of suspected fentanyl on August 25, 2019.**

8.   On August 14, 2019, investigators from the Drug Enforcement Administration (DEA) High Intensity Drug Trafficking Area Group 1 (HIDTA1) began monitoring a court sanctioned T-III Wire Intercept on telephone number (504) 952-1598.  The investigators had previously identified the telephone number as being utilized by **BATISTE**, who is a target of this investigation and a known distributor of illegal narcotics.  The investigators had also previously established that telephone number **(985) 201-4221** was a Verizon telephone number and was also subscribed to **BATISTE**, but was being utilized by **Octavius NARCISSE ("NARCISSE")**, black male, date of birth 01-15-1967.  **NARCISSE** was a known close associate of **BATISTE** who had been identified early in the investigation.  By monitoring the aforementioned T-III Wiretap, TFO Buckler has established that during the approximate time frame before the traffic stop that resulted in the seizure of the **Target Device**, **NARCISSE** and **BATISTE** were in contact on the two aforementioned telephones.

9.   On August 25, 2019, at approximately 5:35 PM, TFO Buckler was advised by DEA New Orleans Field Division personnel who were monitoring the T-III Wiretap that they had intercepted communications between **BATISTE** and **NARCISSE** regarding **NARCISSE** traveling to Amite, Louisiana.  Based upon the conversations that ensued over the next period of approximately one hour, TFO Buckler was reasonably certain that **NARCISSE** traveled to Amite, Louisiana to pick-up narcotics for **BATISTE**.  Based upon the intercepted telephone calls, TFO Buckler believed that **NARCISSE** was utilizing **BATISTE's** 1990 Chevrolet pickup truck bearing Louisiana license plate Y262731.  TFO Buckler had previously had **BATISTE's** license plate

information entered into the License Plate Recognition (LPR) camera system.  At approximately

5:48 PM, TFO Buckler received an electronic notification that **BATISTE's** vehicle had registered

on the LPR system on Interstate I-55 northbound in Hammond, Louisiana.

10.     Anticipating that **NARCISSE** would be returning to St. John the Baptist Parish,

TFO Buckler immediately advised SJPSO Special Operations Division (SOD) Major Tanner

Mangano that **NARCISSE** was expected to be traveling through St. John the Baptist Parish in the

immediate future and would possibly be in possession of illegal narcotics.  TFO Buckler and Major

Mangano then assembled members of SOD and began stationing deputies along Interstate I-55 in

St. John the Baptist Parish.  At approximately 6:47 PM, TFO Buckler received a notification from

the LPR system that **BATISTE's** vehicle had registered on Interstate I-55 southbound in

Hammond, Louisiana.  At approximately 6:51 PM, SJSO Captain Monty Adams visually observed

**BATISTE's** vehicle southbound on I-55 near the Ponchatoula on-ramp.  At approximately 6:59

PM, SJSO Deputy Steve Hughes visually observed **BATISTE's** vehicle traveling southbound on

I-55 near mile marker 13.  At approximately 7:04 PM, SJSO Sergeant Joshua Gilboy visually

observed the vehicle traveling southbound on I-55 near the 7.6 mile marker.  At approximately

7:07 PM, SJSO Sergeant Gilboy again visually observed the vehicle traveling southbound on I-55

near the 2.4 mile marker.  At approximately 7:09 PM, SJSO Major Tanner Mangano visually

observed the vehicle exit I-55 at the Laplace exit and begin traveling southbound on Highway 51.

11.     At approximately 7:13 PM, SJPSO Deputy Benjamin Teekel conducted a traffic

stop on **NARCISSE** near the intersection of Palmetto Drive and Highway 51 (3221 Highway 51)

after observing traffic violations.  Deputy Teekel subsequently utilized his K9 partner and

observed that the K9 indicated the presence of narcotics inside of the vehicle.  Deputies

subsequently performed a search of the vehicle and discovered six parcels wrapped in brown tape,

4

located within a black duffel bag in the vehicle.  Deputies noted that five of the parcels were rectangular shaped and one of the parcels was oblong.  Deputies seized the parcels, the black duffel bag, and the **Target Device**.  Deputies subsequently conducted a field test of the material present in the parcels and noted a positive test result for cocaine in a rectangular shaped parcel and an inconclusive test result in the oblong shaped parcel.  The investigators also weighed the suspected narcotics and noted the five rectangular parcels containing suspected cocaine weighed approximately 5.486 kilograms.

12.    **NARCISSE** was arrested by Deputy Teekel for violation of Louisiana Revised Statutes 32:64 (General Speed Law), 32:295.1 (Seat Belt Required), 32:304 (Tail Lamps Required), 40:967A1 (Possession with Intent to Distribute Cocaine) and 40:981.3 (Drug Free Zone).

13.    On 08-27-2019, TFO Buckler and Special Agent (SA) Catanzaro collected the seized items from the SJPSO and transported the exhibits to the DEA NOFD.  Upon arriving at NOFD, agents requested that Special Agent Joey Blackledge conduct a field test of the contents of the oblong parcel, utilizing a MX908 Gas Spectrometry Machine.  SA Blackledge thus field tested the contents of the parcel and noted a positive test result for fentanyl.  SA Catanzaro also weighed the parcel containing suspected fentanyl and noted an approximate weight of 1.06 kilograms.  SA Catanzaro subsequently advised GS Clyde Mclaughlin and Assistant United States Attorney Duane Evans of the positive test for fentanyl.

14.    Your affiant has received training and possesses active and collective knowledge that persons involved in the illegal distribution of narcotics and the illegal possession of firearms and known associates of violent criminal organizations often use cell phones to document their illegal activity.  Your affiant has arrested subjects before whom have possessed mobile devices

and computers that contain contacts, pictures, text messages, and other communications related to unlawful narcotics activity and firearm possession. Your affiant knows that people often use cell phones and/or smart phones to take pictures of themselves holding firearms and upload them to social media sites. Your affiant also knows that people engaged in the illegal distribution of narcotics often possess more than one cell phone to conduct various aspects of their illegal drug distribution.

15.     Your affiant knows through his training and experience that data stored within a cellular telephone can be retrieved through a forensic examination. This examination will capture said data allowing the forensic examiner to replicate the information. The data can then be analyzed to determine if the captured information is of any evidentiary value. Your affiant also knows that data can be stored on a cellular phone device by physically capturing the data (cell phone camera), by multimedia access (data being linked through a text message and referring the user to a specific web site), or by transmitting data attached to text messages.

## TECHNICAL TERMS

16.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice

communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards

7

or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive email.  PDAs usually include a memory card or other removable storage media for storing

data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17.     Based on my training, experience, and research, I know that the **Target Device** has capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

19.     *Forensic evidence.*  As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on **Target Device** because:

   a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.   Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that an individual's electronic device can generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

20.   *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

*Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21.   I submit that this affidavit supports probable cause to authorize the forensic examination of the **Target Device**, as they are more fully described in **Attachment A**, for the purpose of identifying the electronically stored information, as more fully described in **Attachment B**.

## REQUEST FOR SEALING

22.   It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into a criminal organization, and not all of the targets of this investigation are aware of the investigation at this time.  Based upon my training and experience, I have learned that, criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other criminals as they deem appropriate, i.e., post them publicly online.  Premature disclosure of the contents of this

affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Douglas Buckler, Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me
this __12th__ day of September, 2019
at New Orleans.

HONORABLE JANIS VAN MEERVELD
UNITED STATES MAGISTRATE JUDGE

13